**Eunice Phinnie Gray, Appellee, v. William George Gray, Appellant.**
**Eunice Phinnie Gray, Appellant, v. William George Gray, Appellee.**

**Gen. Nos. 46,521, 46,656.**

First District, Second Division.

June 28, 1955.

Memorandum on Denial of Petition for Rehearing, August 5, 1955.

Released for publication September 13, 1955.

Case No. 46521: Westbrooks, Holman, Johnson & Farmer, of Chicago, for appellant; Claude W. B. Holman, Evelyn F. Johnson, and Muriel O. Farmer, all of Chicago, of counsel.

Prescott, Burroughs, Taylor & Carey, of Chicago, for appellee; William C. Wines, and Richard K. Cooper, both of Chicago, of counsel.

Case No. 46656: Euclid Louis Taylor, of Chicago, for appellant; William C. Wines, of Chicago, of counsel.

Westbrooks, Holman, Johnson & Farmer, of Chicago, for appellee; Claude W. B. Holman, of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Two appeals have been consolidated—one from an order allowing temporary alimony and solicitor's fees, and the other from an order denying a motion for continuance on account of the engagement of counsel and dismissing plaintiff's complaint for divorce for failure to prosecute. The error charged in respect to the latter point is that the court had no power to proceed with the hearing on the merits until the appeal from the interlocutory order had been decided, or if it did have such power, that it abused its discretion in denying plaintiff's motion for a continuance.

 We will consider first the argument of plaintiff that the trial on the merits should abide the event of the appeal from the interlocutory order. That was a temporary order, designed to provide for plaintiff pending the trial of the case. Defendant had the right to test by appeal the validity of the order and he also had the right to insist on a prompt disposition of the case on the merits for the very reason that a temporary or provisional order had been entered without a hear-

ing on the merits. To hold that an appeal from an order such as this should stay the trial of the case on its merits would mean that in cases in which an interlocutory order has no direct bearing on the ultimate issues, or in cases where receiverships are involved and numerous appeals may be taken on relatively minor matters, the entire proceeding could be delayed. Moreover, a bond was given for the payment of any amount due on the temporary order. Under such circumstances, we see no justification for delaying the hearing on the merits of the case.

Plaintiff cites the case of Cowdery v. Northern Trust Co., 321 Ill. App. 243, in support of her position. In that case the trial court dismissed the complaint for want of equity. Plaintiff appealed from that decree. While the appeal was pending the trial court in a supplemental proceeding allowed certain attorney's fees and expenses. That order was necessarily based on the assumption that the entry of the original decree was proper. The Appellate Court reversed both decrees. This is entirely different from an appeal from a temporary order which can only remain in force until a trial on the merits.

This brings us to the principal issue—did the court abuse its discretion when it overruled the motion for a continuance? This court will not interfere with a trial court's order in such matters unless it is obvious that there has been an abuse of discretion. All the members of this court have had experience in the trial court and we are familiar with its problems. We understand the background of the court's ruling. There are pending in the Superior Court of Cook county approximately 23,000 cases. At the fall calendar the court will be five years behind in the trial of civil jury cases.

A tremendous increase in litigation followed the termination of the Second World War. In order to cope with the problem of disposing of this litigation, the court in 1950 adopted the assignment plan. At first

575

it was applied only to civil jury cases. Subsequently divorce cases and nonjury civil cases were included and placed on the calendar of an assignment judge. This system had been adopted by all the great metropolitan courts of the country. The purpose was to provide an orderly arrangement for the setting of cases for trial and their prompt assignment to judges available. One of the special problems intended to be solved was that of the many motions for continuance on account of prior engagement pressed upon judges by trial lawyers. A trial bar variously estimated at 50 to 150 lawyers tries the vast majority of cases of consequence in courts of record in this county. The number is wholly inadequate and, in the view of the assignment judge and to our own knowledge, constitutes one of the principal barriers to the prompt dispatch of the business of the court. Some of these lawyers have more than 500 cases on their calendars; a few, more than 1,000. It had become the practice for many such lawyers to enter their individual appearances and to insist that the representation of their client was personal, so that frequently they would not only have a number of cases on the trial call of an individual calendar, when that system was in effect, but sometimes had cases on five or ten calendars at the same time. They were thereby always in position to ask for continuances on account of engagement and to determine which case it would serve their purpose to try first. It was not uncommon for judges to call 40 or 50 cases in an unsuccessful effort to find one ready for trial. Trial judges, in a desperate effort to find work, would communicate with each other as to which case the busy lawyer should try, and sometimes disputes arose between judges as to the court in which the lawyer should first be required to go to trial.

It was the purpose of the assignment system to solve these problems of the court by placing in a single judge control of motions for continuance prior to the

time of assignment and to assign all cases for *trial*. To that end Section 2 of Rule 20 of the Rules of the Superior Court provides that all motions for the continuance of law jury and nonjury cases and all motions for the advancement of law jury and nonjury cases shall be heard by the assignment judge. While this rule does not explicitly include divorce, when under Section 4 of Rule 42 divorce cases were placed on the calendar of the assignment judge, it was clearly intended that the same policy should apply to them. That policy is an essential part of the assignment system. The assignment judge knows the total number of cases a lawyer has on call, when he has taken on more business than he can handle, and when he has exhausted any claim for consideration of a motion for a continuance. In other metropolitan centers rules have been enforced requiring lawyers to enlarge their organizations in proportion to the increase in their business and, in the event of their failure to do so, all motions for continuance on account of engagement are denied them. Thus, in the City of Detroit, Michigan, when the number of cases a lawyer has on call exceeds 200, an additional lawyer is required for each additional 100 cases. While no such rule was adopted by the Superior Court at the time the assignment system was established, lawyers whose practice had increased beyond their capacity understood that the courts expected them to enlarge their organizations accordingly, and *some of them did so.*

■ Under the assignment system and under the rules above stated, when a case has been sent to a judge for trial, he must not entertain any further motions for continuance, except perhaps for some extraordinary circumstance arising between the time the case was sent down for trial and the time the trial judge proceeded to hear it. Nor should there be any loss of time in starting the trial. This is entirely in the hands of the trial judge. He should not permit attorneys to

consume the court's time by rearguing motions for continuance, but should proceed promptly with the trial of the case. He must act on the assumption that the assignment judge has disposed of all preliminary matters as provided by the rules.

All the members of this court have practiced law and are familiar with the many problems of the busy trial lawyer. We understand and are sympathetic with the burdens placed upon him and with his reluctance to place a limit on his personal capacity. However, this must yield to what Mr. Justice Jackson, in Knickerbocker Printing Corp. v. United States of America, Adv. Rep., Supreme Court of the United States, Lawyers' Ed., Vol. 99, No. 1, 11/22/54, at p. 19, described as delayed justice which "has become little less than scandalous." In that case the Supreme Court of the United States was asked to extend the time for the filing of a petition for a writ of certiorari on the ground that the applicant's attorney had become actively engaged in other matters. The Justice said:

"When more business becomes concentrated in one firm than it can handle, it has two obvious remedies: to put on more legal help, or let some of the business go to offices which have time to attend to it. I doubt if any court should be a party to encouraging the accumulation of more business in one law office than it can attend to in due time."

Mr. Justice Jackson stated the matter entirely too mildly.

The law's delay in many lands and throughout history has been the theme of tragedy and comedy. Hamlet summarized the seven burdens of man and put the law's delay fifth on his list. If the meter of his verse had permitted, he would perhaps have put it first. Dickens memorialized it in Bleak House, Chekhov, the Russian, and Moliere, the Frenchman, have written tragedies based on it. Gilbert and Sullivan have sati-

rized it in song. Thus it is no new problem for the profession, although we doubt that it has ever assumed the proportions which now confront us. "Justice delayed is justice denied," and regardless of the antiquity of the problem and the difficulties it presents, the courts and the bar must do everything possible to solve it. We cannot entertain the indifference to it which some members of the trial bar have. Franklin's stoical observation "Ca ira" ("It will pass"), as the events of the time cast their shadow in France, represents a current observation on this problem. It may pass, but with it may pass all regard which a long-suffering public has for the legal profession and for the courts. Commercial disputes are now generally submitted to arbitration and few, relatively speaking, are brought to court. Administrative bodies have been organized to bypass the insufferable delays and technicalities of the law. Accountants, engineers and businessmen have taken over in fields when the law failed to provide for the speedy adjustment of disputes.

When a judge, out of timidity or professional sympathy, grants one lawyer an unwarranted continuance, he does an injustice not only to the opposing side but to the other litigants in that court. Moreover, it is within the knowledge of all of us that many a young and obscure lawyer, after waiting years before his case gets on the trial call, is then overwhelmed by the opposition of a more experienced or effective opponent who wins continuance after continuance. In despair he often settles for less than his case would warrant or he may lose his witnesses and his client. These facts are not all present in the instant case. They are set forth as background for the court's action, and it is in the light of that background that we must consider the facts in the case before us.

■ The case came on for trial on October 29, 1954, and over the objection of counsel for defendant, was continued to November 4. On that date, over the ob-

579

jection of defendant, it was continued on account of the engagement of Mr. Taylor, counsel for plaintiff, to November 17. On November 17 the case was continued for the same reason over objection to November 19. On the 19th it was postponed to November 22 on account of the continued engagement of counsel for plaintiff. On November 22 the case was assigned to a trial judge for trial. On that day another motion for continuance was made and was denied by the trial judge. This motion was made by Mr. Taylor's associate, Mr. Patterson, who refused to go ahead with the trial on the ground that he was not prepared and that Mr. Taylor was the only one who could try the case. Thereupon, the trial judge dismissed the complaint. A petition was then filed seeking to set aside the order of dismissal, alleging that counsel for plaintiff had been actively engaged from November 1 to November 22, 1954, and that his associate had requested a one-day continuance. The record does not support the averment that the request was for a one-day continuance. It appears that the case in which plaintiff's counsel was engaged terminated on November 19. In any event, it was the duty of the trial judge to do what he did—deny all motions for continuance and proceed with the trial in accordance with the rule.

■ In an affidavit supporting the petition to vacate the judgment Mr. Patterson stated that plaintiff had retained Taylor to represent her, and not Patterson, and "that she has a constitutional right to select her attorney and to be represented by her attorney in the trial of her case." That point was not pressed by counsel on appeal, but as it is frequently made and sometimes accepted by the trial courts, we will consider it. It is wrong in theory, in its premise, and in its conclusion. There is no constitutional, statutory or other provision which gives a party the right to choose a particular lawyer, without regard to whether that law-

580

yer has the time to try the case or not. Such a doctrine would have results that would be disastrous. We cannot assume that there is only one lawyer who can properly represent the plaintiff in this divorce case. There are 11,000 lawyers in Cook county. The attorney for plaintiff is an able lawyer, well-known to the members of this court. His ability has attracted a large clientele. However, in times like these when litigation swamps the courts, it is the duty of lawyers to cooperate in the transaction of the business of the court. Therefore, as suggested by Mr. Justice Jackson, where business is tendered a lawyer to which he does not have time to attend, he should let it go to some other lawyer.

It is the duty of our profession to train younger men to take care of the legal needs of the community. This is done on a large scale in the medical profession. It is a matter to which trial lawyers in particular should give attention. We consider a baneful practice the custom which has grown in past years of a trial lawyer appearing alone, no matter how important the case may be, on the assumption that court or jury may be impressed by the lone advocate struggling to represent his client. The lawyer who represented plaintiff is a member of a large firm. We do not know the nature of his arrangement with his associates but the trial court had the right to assume that one of them would have come to his rescue in the emergency. If he has no such arrangement and has trained no one to assist him, the responsibility is his for his client's dilemma.

The suggestion that the court committed error by not hearing the evidence on the motion to vacate is without merit. The facts are not substantially in dispute. It is clear that plaintiff's attorney had exhausted his right to consideration of any further motions for

continuance on account of engagement and that the trial court, far from abusing its discretion, did the only thing it could do under the rules. The assignment judge likewise did his duty.

■ There remains for disposition the order for temporary alimony and attorney's fees. From evidence heard by the trial court it appeared that defendant is the head of a real estate business and makes about $200 a week, gross before taxes. Plaintiff earns $60 a week before taxes and other deductions. They have no children. There is some dispute over the wife's income, but the trial court assumed $60 per week to be correct when it entered its order. Plaintiff claims an interest in the house formerly occupied by both. When the parties separated, plaintiff continued to live in the house. Defendant makes monthly payments of $120 on the mortgage on this house and pays the gas, electricity, telephone and other items totaling approximately $90 a month. In his personal requirements defendant includes $100 per month for payments on his car, expenses of about $37 a week, taxes and other items. Plaintiff appears to be in a better cash position than defendant. When we deduct from defendant's earnings the amount he pays on the mortgage plus the other necessary items, he appears to have less left than plaintiff. From plaintiff's own account of her requirements, there was no pressing need for a temporary order. She had the home in which she lived and on which defendant made all payments and paid the various utility items. We see no basis under such circumstances for the entry of a temporary order.

Order in case No. 46521 for temporary alimony and attorney's fees reversed.

Order in case No. 46656 dismissing complaint affirmed.

McCORMICK, P. J. and ROBSON, J., concur.

582

In the petition for rehearing plaintiff's counsel have set up facts not heretofore argued and in support thereof have filed an additional abstract. Defendant has moved to strike the additional abstract and the petition for rehearing. He asserts that the evidence is not correctly abstracted and does not support the statements made in the petition for rehearing.

■ There is no provision in the rules for the filing of an additional abstract after a decision of a case. Circumstances could exist under which the court would not permit an injustice to be done by reason of a misunderstanding of the facts. That is not the situation here. In our opinion in this case we assumed that the figures of $200 a week gross income for defendant and $60 for plaintiff were correct. These figures were concurred in by attorneys for both plaintiff and defendant and that was the basis upon which the trial court made its decision. As set forth in the opinion, we took into consideration the fact that plaintiff had the use of the house in which she claims an interest and that defendant was making the mortgage payments thereon and was paying all expenses connected with the operation of the house. Counsel for plaintiff now argues that defendant's income was more than the figure given, and explains that he accepted the figure given for defendant's income because he relied upon the abstract presented by defendant and did not examine the record. The figures we used were accepted by the trial court as well as counsel, as appears from page 254 of the record, where the court said:

". . . I am not basing my conclusion on anything other than the testimony of the defendant and am ignoring for the present purpose the possibility the defendant may or may not reduce his income or that his

583

income may reach the figure of $500 per week or any other sum above the $847 per month of which he testified."

The court then said that the case should be reached for trial before court adjourned in July and hence that it was a matter of *making allowance for a period of six weeks only.* This was a further reason why defendant should have been given a prompt hearing. Ordinarily we would not interfere with the discretion of the trial court in the allowance of temporary alimony, but the extraordinary circumstances of this case made it necessary.

The objections to the additional abstract and to the verity of the new facts as now asserted in plaintiff's petition for rehearing seem to be well taken. However, we do not attribute the errors to any deliberate motive on the part of plaintiff's counsel, as counsel for defendant does, but to the heavy burden of labor imposed upon these lawyers, as upon others of the trial bar of this county.

As counsel for plaintiff said, the issue still remains undetermined, "pending and bitterly contested." It is the duty of the lawyers for both plaintiff and defendant not to permit such bitterness to flow into their own hearts and minds. This is in their personal interest as well as in the interest of this litigation. The matter of alimony and solicitor's fees can best be determined by an early hearing on the merits.

With respect to the denial of the motion for continuance on account of engagement of counsel, the petition presents no new matter.

The petition for rehearing is denied.

Petition denied.

McCORMICK, P. J. and ROBSON, J., concur.