DEPARTMENT OF GENERAL
SERVICES, STATE OF IOWA,
Plaintiff-Appellee,

v.

R.M. BOGGS COMPANY, INC.,
Defendant.

R.M. BOGGS, INC., Third-Party
Plaintiff/Appellee,

v.

The BOGGS CORPORATION, Third-Party Defendant/Appellant.

No. 69351.

Supreme Court of Iowa.

July 20, 1983.

Burns H. Davison II, and Joseph S. Cortese II, of Jones, Hoffman & Davison, Des Moines, for third-party defendant-appellant The Boggs Corp.

Thomas J. Miller, Atty. Gen., John R. Scott, Sp. Asst. Atty. Gen., and Patrick J. Hopkins, Asst. Atty. Gen., for plaintiff-appellee.

McGIVERIN, Justice.

This is an interlocutory appeal which could have been avoided. The Boggs Corporation was granted an interlocutory appeal from the district court's denial of its motion for continuance made after it became apparent to the attorney for The Boggs Corporation that he was scheduled, in the same courthouse, for two overlapping trials. We hold that the trial court's denial of the motion was an abuse of discretion and reverse.

This case is an example of the morass of difficulties involved in bringing a multi-party case to trial. On April 14, 1978, an anchor and expansion joint on the main steam line of the Iowa State Capitol Complex energy system failed, resulting in an explosion of 350° F. steam. The original petition for damages from the explosion was filed by plaintiff Department of General Services, State of Iowa, against defendant R.M. Boggs Company, Inc., the project contractor. On September 24, 1980, defendant filed a cross-petition against third-party defendant The Boggs Corporation (Boggs), its subcontractor. Several other parties later were brought into the litigation. To avoid dismissal for lack of prosecution under Iowa R.Civ.P. 215.1, General Services filed a motion for continuance on October 29, 1981. By stipulation of the parties, the continuance order was granted and the court set the case for trial on August 9, 1982, in the Iowa district court for Polk County.

On June 9, 1982, it became apparent that a conflict with another multi-party trial on the same date existed and the attorney for Boggs filed a motion for continuance. A hearing was held on the motion on June 29, 1982, and all parties agreed to the continuance because it was unclear when certain deponents would be available in order to complete discovery. A new trial date of November 8, 1982, was agreed upon by the parties and ordered by the court.

Boggs contends that its agreement to that date was qualified by alerting the court and other counsel that on April 5, 1982, its attorney had been scheduled by order of Judge Miller for a trial of still another multi-party case to commence on November 1, 1982, to a jury before Judge Miller also in the Iowa district court for Polk County. Boggs' counsel believed, however, that the matter set for trial on November 1 would be settled, and, even if not settled, the trial was not expected to run past November 5.

On August 6, a pre-trial conference on the present case was held at which the scheduled trial date of November 8 before Judge Denato, by his order, was confirmed and no objections to it were filed.

On October 29, however, Boggs' attorney filed a motion for continuance on the basis that settlement negotiations for the case scheduled to be tried November 1 to a jury before Judge Miller had broken off and that it was now apparent the trial in that matter would take three weeks. Plaintiff General Services resisted. That case went to trial as scheduled before Judge Miller.

Thereafter, the district court (Judge Denato) denied the motion for continuance. In so doing, it noted that although neither the court nor opposing counsel recalled any qualified agreement of Boggs to the November 8 trial date, past experience with that counsel led the court to conclude he would not misinform the court.

Not content with the court's requirement that he appear in two trials simultaneously, the attorney for Boggs filed an application with us for a stay order and for interlocutory appeal seeking review of the district court's denial of his motion for continuance. We stayed the proceedings in district court,

granted interlocutory appeal, and ordered an expedited briefing schedule.

On December 10, however, the parties to this appeal advised us that the case had been settled and dismissed in the district court. The first issue before us, therefore, is whether this appeal should be dismissed as moot.

■ I. *Mootness.* Moot questions will be considered when (1) they are of great public importance and (2) are likely to recur. *City of Des Moines v. Public Employment Relations Board,* 275 N.W.2d 753, 758 (Iowa 1979). The first prong of the test is best analyzed by considering (1) the public or private nature of the question presented, and (2) the desirability of an authoritative adjudication for future guidance of public officials. *Rush v. Ray,* 332 N.W.2d 325, 326 (Iowa 1983).

■ Public concern for the delays inherent in our judicial process is undeniable:

The law's delay in many lands and throughout history has been the theme of tragedy and comedy. Hamlet summarized the seven burdens of man and put the law's delay fifth on his list. If the meter of his verse had permitted, he would perhaps have put it first. Dickens memorialized it in *Bleak House,* Chekhov, the Russian, and Moliere, the Frenchman, have written tragedies based on it. Gilbert and Sullivan have satirized it in song. Thus it is no new problem for the profession, although we doubt that it has ever assumed the proportions which now confront us. "Justice delayed is justice denied," and regardless of the antiquity of the problem and the difficulties it presents, *the courts and the bar must do everything possible to solve it.*

*Gray v. Gray,* 6 Ill.App.2d 571, 578–79, 128 N.E.2d 602, 606 (1955) (emphasis added). Unwarranted continuances clearly add to the delay. Trial courts face the unenviable burden of balancing the need to clear up their backlog with granting continuances when justice and equity so demand. Since conflicts in busy attorneys' schedules will continue to plague the trial courts, we con-

clude that this appeal should not be dismissed as moot.

■ II. *Continuances.* Trial courts have broad discretion in deciding whether to grant motions for continuances; absent a clear abuse of this discretion, we will not interfere. *Madison Silos, Division of Martin Marietta Corp. v. Wassom,* 215 N.W.2d 494, 499 (Iowa 1974). In this case, however, we conclude the trial court abused its discretion. *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982) (abuse of discretion refers to "an erroneous conclusion and judgment, one clearly against logic and effect of facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom").

■ The fact that an attorney has a conflicting trial schedule does not give him or her an automatic right to a continuance. However, especially when the scheduling conflict arises within the same courthouse or judicial district, our unified court system provides an effective mechanism for dealing with such conflicts when good cause is shown.

■ In the present case, Boggs consented to the November 8 trial date believing that a case involving its attorney which was scheduled to be tried one week earlier would be settled or, if not settled, could be tried within one week. As soon as it became apparent that he was mistaken, counsel filed a motion for a continuance pursuant to Iowa R.Civ.P. 181.3(b):

When a case assigned for trial is reached and an attorney of record therein is then actually engaged in a trial in another court, it shall be his duty to so inform the court who may hold the trial of such case in abeyance until the engagement is concluded. As soon as the attorney is free from such engagement it shall be his duty to notify the court immediately and stand ready to proceed with trial of the case.

Counsel argued that the young associate working with him on the case could not adequately represent Boggs in such complicated litigation because he had just gradu-

ated from law school and had never tried a case in court. On the basis of such a record, we believe the trial court abused its discretion in denying the continuance. *Cf. Coburn v. Domanosky,* 257 Pa.Super. 474, 480, 390 A.2d 1335, 1338 (1978) ("[T]he most important factor [for granting the continuance is that] counsel did offer a reasonable explanation for his scheduling conflict, specifically, that he thought that he could handle both the civil and the criminal cases, because the criminal case looked to be a short one, and because the civil case was far down on the list [of civil cases for that week].").

In an effort to avoid the need for appeals like this one in the future, we believe that Iowa R.Civ.P. 377 provides a ready mechanism to assist counsel and trial judges in dealing with scheduling conflicts such as this. The district court in Polk County is a part of the Fifth Judicial District, which, for administrative purposes, is headed by a chief judge. Rule 377 provides that

chief judges [of a judicial district] shall exercise continuing administrative supervision within their respective districts over all district courts.... They shall by order fix times and places of holding court and designate the respective presiding judges ...; they shall supervise and direct the performance of all administrative business of their district courts....

The scheduling of cases is administrative business of the district court. The chief judge of a judicial district may be assisted in the scheduling of cases for trial by a district court administrator, who is appointed under Iowa Code section 605.35 (1983), and the other judges. The district court in Polk County as a part of the Fifth Judicial District has a court administrator who may schedule cases for the judges under the supervision of the chief judge. The administrator was notified by letter of the conflict by counsel for Boggs. The attorney was ordered to be in Judge Denato's court on a date that fell during the second week of the trial before Judge Miller.

A corollary to the assignment of cases is the continuance of cases. A ruling on a motion to continue is beyond the authority of a court administrator as it is a judicial act which must be performed by a judge. Rule 377 also provides that the chief judge designate a presiding judge. The presiding judge and the court administrator are responsible to the chief judge for the orderly assignment and scheduling of cases.

In courts with several judges sitting to handle the various assignments, logic dictates that motions for continuances that are based on an attorney's unavailability due to a scheduling conflict should not be handled by one of the individual judges involved in the conflict. Judge Denato should not have denied or sustained this motion; he should have referred it to the presiding judge, if one had been appointed, and otherwise to the chief judge, for ruling. The presiding judge is in the best position to evaluate the conflict between the assignments, the causes for them, the alternatives, and finally to rule on the motion.

The ruling should be made timely enough so that the attorney with the conflict and other parties, counsel and witnesses in the second scheduled trial will have a minimum of inconvenience and expense caused to them by the conflict situation. In other words, the ruling—consistent with the second case being tried as scheduled if at all possible—should occur an adequate amount of time before the second trial is scheduled to start.

If a continuance is granted, the court administrator should be directed to adjust the trial calendar to reschedule the case at the earliest possible date.

Continuances should not be encouraged. We caution counsel not to take responsibility for more litigation and legal work than they can reasonably handle. Also, counsel should attempt, where possible, to avoid undue delay in the courts because of schedule conflicts by reason of only one attorney in a firm being prepared to handle the case for a client.

As before stated, no attorney has an absolute right to a continuance; an unwarranted continuance also may be "justice denied."

When a judge, out of timidity or professional sympathy, grants one lawyer an unwarranted continuance, he does an injustice not only to the opposing side but to the other litigants in that court. Moreover, it is within the knowledge of all of us that many a young and obscure lawyer, after waiting years before his case gets on the trial call, is then overwhelmed by the opposition of a more experienced or effective opponent who wins continuance after continuance. In despair he often settles for less than his case would warrant or he may lose his witnesses and his client.

*Gray,* 6 Ill.App.2d at 579, 128 N.E.2d at 606.

The decision of the district court is reversed, but the case is not remanded. Costs are taxed to the plaintiff.

REVERSED BUT NOT REMANDED.

All Justices concur except McCORMICK, CARTER, WOLLE and HARRIS, JJ., who dissent.

McCORMICK, Justice (dissenting).

This case had been pending for more than three years. It involved five parties, all represented by busy lawyers. The case had previously been saved from dismissal under Iowa R.Civ.P. 215.1 by a continuance, and Boggs had obtained a continuance in June 1982 on the ground of its counsel's probable engagement in another trial. The November 8, 1982, trial date had been agreed upon by all counsel at pretrial conference held four months before the filing of the third motion for continuance. Counsel for Boggs practices in a nine-person law firm. The week of November 8 had been reserved for the trial, and the court believed it was too late to assign another case for the period.

In all of these circumstances, I do not believe Judge Denato erred as a matter of law in denying Boggs an additional continuance on the same ground as before. The question does not involve merely the rights of Boggs. It involves the rights of all the parties to expeditious and orderly disposition of the case. Furthermore it implicates the public interest and concern about undue delay of litigation.

With due respect for the rights of Boggs and the problem of Boggs' counsel, I believe Judge Denato had the right to weigh the competing interests and decide against an additional continuance with all of its disruptive tangible and intangible costs to the parties and the public. There comes a point when busy lawyers must either take on less work or be prepared to have substitute trial attorneys available to meet their trial commitments. Judge Denato thought that time had come in the present case, and I would not find his discretion was exercised on clearly untenable grounds or to a clearly unreasonable extent.

HARRIS, J., joins in this dissent.

CARTER, Justice (dissenting).

I dissent. At the risk of mixing metaphors, I submit that the present appeal has three strikes against it before it even gets out of the gate.

The first strike is our holding in *State ex rel. Turner v. Midwest Development Corp.,* 210 N.W.2d 525, 526 (Iowa 1973) that if "the case from which this appeal stems is now nonexistent there is no alternative but to order the dismissal hereof." This holding lays down a special rule of mootness which goes beyond normal mootness doctrine and requires dismissal of the present appeal.

The second strike against this appeal is that even under normal mootness doctrine this case presents no issue of broad application, likely to recur, which requires an announcement of comprehensive principle by the state's highest court. I do not believe that problems of overlapping trial schedules are susceptible to being remedied by establishing rules of general application. Such problems are best handled on an ad hoc basis.

The method which the majority suggests for resolving intra-district trial conflicts is impracticable. It is not necessary and will require a waste of judicial resources to require a neutral third judge to hear and decide motions for continuance. All judges

of the district court are required by their oaths of office to be neutral and impartial, and I believe that we should presume that they are capable of so being.

The third strike against this appeal is that given the ever-present possibility that the prognosis with respect to either of the two conflicting trials might have changed, I do not agree with the majority's conclusion that the trial court was guilty of an abuse of discretion in refusing to grant a continuance on November 2, 1982. This was six days prior to the beginning of the conflicting trial. Much can happen in six days to obviate the need for resetting a trial. Perhaps it would have been preferable for the trial court in the present case to have deferred ruling on the motion for continuance until the November 8 trial was reached. But the fact that the motion for continuance was denied on November 2 does not necessarily mean that the court would not have complied with the spirit of rule 181.-3(b) if and when the conflicting trial was reached and given precedence to the trial in progress. The unfortunate result which will surely flow from this court's decision in the present case is that trial judges will now feel compelled to grant a continuance whenever a potential future schedule conflict is presented and will not feel free to await the actual time of trial before ruling on the matter. This will result in many needless continuances.

Three strikes should be more than enough to justify the demise of the present appeal. I would dismiss it as moot.

HARRIS, J., joins this dissent.

WOLLE, Justice (dissenting).

I believe this appeal should be dismissed as moot. The underlying case was settled and dismissed with prejudice shortly after this court granted an interlocutory appeal and a stay of the proceedings in the district court. This is no longer a true adversary proceeding, for the parties no longer have a stake in its outcome. *State ex rel. Turner v. Buechele,* 236 N.W.2d 322, 324 (Iowa 1975).

Moot questions may be decided when they concern issues of great public importance which are likely to recur, making it desirable that a court provide guidance to public officials. *Rush v. Ray,* 332 N.W.2d 325 (Iowa 1983); *City of Des Moines v. Public Employment Relations Board,* 275 N.W.2d 753, 758 (Iowa 1979). This is not such a case. Although court delay is a serious problem for Iowa and other states, the specific problem confronted by the trial judge in this case is unlikely to recur. The two cases here competing for the services of one attorney were both exceedingly complex, with multiple parties and attorneys. One was a jury trial, one was not. The unique character of the facts and circumstances of both cases and their relationship to each other will severely limit the usefulness of the majority opinion as a guideline-setting precedent. Future cases involving attorneys' scheduling conflicts will almost certainly be distinguishable from this case on one factual difference or another.

To the extent that trial judges are urged to make effective use of court administrators to reduce the likelihood of scheduling conflicts, the majority opinion may have a positive influence in reducing the need for continuance requests, hearings on such requests, and subsequent appeals like this one. We should be concerned, however, that the majority opinion may hereafter occasionally exascerbate the problem of delay in judicial proceedings. A majority of this court here holds that the trial court abused its discretion in refusing a continuance when one of the trial lawyers was already engaged in trial in another court. Because the attorney had alerted the trial court to a possible problem, was mistaken in his belief that the other case would either settle or be concluded in time to commence trial of this case, and then promptly requested relief, the majority opinion finds that he had a right to a continuance under Iowa R.Civ.P. 181.3(b). A negative effect of that decision could be a mistaken belief by some attorneys that they always have a right to a continuance when they are scheduled into a court and are already engaged in trial. They do not. Iowa R.Civ.P. 181.3(b) says the court "may

hold the trial of such case in abeyance"—"may", not "shall." Trial judges still have an appropriate wide discretion to weigh all the unique factors of two cases competing for a trial attorney's time before sustaining or denying an attorney's request for continuance based on schedule conflicts. Recently in *Michael v. Harrison County Rural Elec. Co-op.*, 292 N.W.2d 417 (Iowa 1980), this Court affirmed the denial of a motion for continuance, stating:

> For us to find an abuse of discretion in a trial court's ruling, it must be shown by the complaining party that the trial court's action was unreasonable under the attendant circumstances. *State v. Cott,* 283 N.W.2d 324, 329 (Iowa 1979). We note, too, that discretionary rulings, such as the one here, are presumptively correct and complainant has a heavy burden to overcome the presumption of regularity. *See State v. Gartin,* 271 N.W.2d 902, 910–911 (Iowa 1978) (quoting Dunahoo, The Scope of Judicial Discretion in the Iowa Criminal Trial Process, 58 Iowa L.Rev. 1023, 1024 (1973)). Ordinarily, an abuse is found to exist only where there is no support in the record for the trial judge's determination. *Rath v. Sholty,* 199 N.W.2d 333, 336 (Iowa 1972). Finally, we have said concerning rulings on motions for continuance that trial courts are accorded broad discretion and absent clearly shown abuse thereof we will not interfere. *Madison Silos, Division of Martin Marietta Corp. v. Wasson,* 215 N.W.2d 494, 498 (Iowa 1974); *See* Iowa R.Civ.P. 183(a).

292 N.W.2d at 419. Those same principles should be considered in connection with the guidelines set forth in the majority opinion.

Court delay is a very real and important problem, one which deserves and receives our constant attention. Justice delayed is often justice denied. Trial and appellate courts alike, working cooperatively with court administrators and bar associations, should continually experiment with, adopt and implement programs which reduce court delays. At the same time we should allow trial judges a reasonably broad discretion to determine when continuance of an individual trial is warranted and when it is not. The majority opinion may unduly limit that discretion when an attorney's scheduling conflict arises.

I would dismiss this appeal as moot.

HARRIS, J., joins this dissent.