# IN THE SUPREME COURT OF IOWA

No. 12–1969

Filed September 20, 2013

**IN RE THE MARRIAGE OF ANGELA MARIE HARRIS
AND PATRIC DAVID HARRIS**

Upon the Petition of
**ANGELA MARIE HARRIS,**

Appellant,

And Concerning
**PATRIC DAVID HARRIS,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Robert A. Hutchison, Judge.

Petitioner appeals the district court's denial of her motion to continue trial and the district court's award of joint physical care. **AFFIRMED.**

Earl B. Kavanaugh of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant.

Patric D. Harris, pro se.

**PER CURIAM.**

The mother of two minor children appeals from a dissolution decree. She contends the district court erred in failing to grant her motion for continuance and in ordering joint physical care. We affirm.

### I. Background Facts and Proceedings.

Angela and Patric Harris were married on May 17, 1997. Angela was then twenty years old and Patric was twenty-six. Both had graduated from high school at the time and both have now completed some college education. They had two children during the marriage: a daughter, now eleven, was born in November 2001, and a son, now four, was born in June 2009.

Both parents were employed fulltime when their daughter was born. Angela left her job at Sears and worked at home as a daycare provider. Soon after the daughter reached school age, Angela began working at Iowa Medicaid Enterprise, where she remains today. Patric has worked since April 2010 in part- and full-time positions for several different employers, after having spent about ten years in a sales position at Gilcrest/Jewett Lumber Company.

The record reveals conflicting testimony as to the quantity and quality of parenting responsibilities performed by the respective parents before Angela initiated dissolution proceedings in November 2010. Angela testified she was the primary caregiver for both children throughout the marriage. Some of Patric's relatives reiterated that testimony, suggesting Patric took a less active role and was uninvolved in many of the decisions affecting the children, despite having taken an active role in many other household decisions. Patric's testimony, however, suggests the parties shared parenting responsibilities equally

and were equally involved in schooling and other activities with the children.

In December 2010, Angela and Patric—both represented by counsel at that point in the dissolution proceedings—reached a mediation agreement that effectively provided for joint legal custody and joint physical care. Under that agreement, the parents rotated in and out of the marital home every several days to shoulder parenting responsibilities according to a set schedule while the children remained in the home. In a second mediation in April 2011, Angela and Patric—again represented by counsel—reached largely the same arrangement (the mediation agreement), again effectively providing for joint legal custody and joint physical care.

In August 2011, Patric sent Angela a proposed dissolution decree memorializing many of the terms of the mediation agreement. After further inquiries from Patric seeking Angela's approval of the proposed decree, Angela indicated in October she no longer favored joint physical care and would seek primary physical care. The district court then entered a scheduling order setting a two-day trial for April 2012 to resolve issues of legal custody, physical care, child support, marital property, and attorneys' fees.

The parties sold the marital home in January 2012 and divided the proceeds according to the terms of the mediation agreement, in part because of the parties' debt concerns. Patric moved into a home in West Des Moines with his current girlfriend and her two children, where he continues to reside. Angela moved into a townhome in Johnston owned by Patric's stepfather, where she continues to reside. The parties have continued to exercise joint legal custody and physical care, as the children split time between the Johnston and West Des Moines homes.

Both parties have taken active roles in schooling, homework, and extracurricular activities since the original temporary mediation agreement was reached in December 2010.

The April 2012 trial was canceled. Angela's counsel then withdrew her representation, citing communication and financial issues. In June, Patric filed a motion seeking enforcement of the parties' mediation agreement, which addressed many of the dissolution issues, including legal custody and physical care. Angela opposed enforcement of the agreement, and the court set a hearing on the motion for late August.

Soon after Patric filed the motion to enforce the mediation agreement, and shortly before Father's Day, Angela filed a domestic abuse petition alleging Patric had committed verbal abuse and made threats of physical harm. The court set a hearing on the petition for June 28 and granted a temporary protective order suspending Patric's visitation until the August hearing on Patric's motion to enforce the mediation agreement. By stipulation of the parties, the court modified the protective order on June 28, allowing for resumption of joint custody and physical care until a final hearing on the protective order could be held in August. Two weeks later Angela initiated contempt proceedings, alleging Patric had violated the modified protective order in failing to grant her certain visitation rights orally agreed upon in forming the June 28 agreement.

At the August 2012 hearing on the protective order and contempt matters, the district court found Angela's filings had been motivated largely by a desire to gain an upper hand in the dissolution proceedings. The court thus denied her request for a permanent protective order and lifted the temporary order. The parties continued thereafter to exercise joint custody and physical care.

The court held a separate August 2012 hearing on Patric's motion to enforce the mediation agreement and concluded the agreement should be enforced. The court ordered the provisions of the agreement incorporated in the final decree of dissolution. Because the agreement was silent regarding child support, insurance costs, and unpaid medical bills, the court scheduled trial for September 27 to address those issues.

In early September, Angela moved for reconsideration of the court's decision to enforce the mediation agreement. She argued the court had failed to consider whether the agreement was unfair or contrary to law and whether it was in the best interests of the children. Patric opposed the motion, contending Angela had had ample opportunity to make these claims at the hearing held the previous month on enforcement of the agreement.

On September 21, a week before trial, the court entered an order reconsidering its ruling on enforcement of the mediation agreement. The court's order ruled that all issues—including legal custody and physical care—would be tried on September 27. Angela moved to continue the trial, citing the concern that six days was insufficient time to prepare her case on legal custody and physical care—issues she had not yet prepared as she had operated under the assumption the trial would be limited to certain financial issues. She also raised the concern that her current attorney, making a limited appearance to argue for the requested continuance, could not practically or ethically prepare for a trial in six days, and that therefore, if a continuance were denied, Angela would likely be forced to try the case on her own behalf. The court denied Angela's request, observing she had already enlisted five different attorneys during the pendency of the case, bringing "lawyers in to just do patchwork on a case of significance for both her and [her family]." The

court added that she had retained, separately, two of those five attorneys in the previous month, and yet she had retained neither for representation at trial. Given that history, the court concluded a continuance would be unfair to Patric and the children. In rejecting Angela's request for a continuance, the court noted this case had been pending far longer than was preferable or necessary for family disputes and observed that Angela had had multiple previous opportunities to present her case on legal custody and physical care issues.

At trial, the parties contested issues of physical care and child support. Angela, appearing pro se, requested joint legal custody but primary physical care. Patric sought joint legal custody and joint physical care, but added an alternative request for primary physical care should the court reject his request for joint care. The court, after considering the factors informing the best-interests-of-the-children inquiry detailed in Iowa Code section 598.41(3), entered a dissolution decree awarding the parties joint legal custody and joint physical care.[1]

Angela appealed, arguing the district court abused its discretion in denying her motion to continue and erred in concluding joint physical care is in the best interests of the children.

## II. Standard of Review.

We review denial of a motion to continue for clear abuse of discretion. *See Dep't of Gen. Servs. v. R.M. Boggs Co.*, 336 N.W.2d 408, 410 (Iowa 1983). We review dissolution rulings de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). We give weight to the

---

[1]We have previously explained that while Iowa Code section 598.41(3) explicitly establishes a nonexclusive list of factors to be considered in custody determinations, the factors enumerated there also guide the best-interests inquiry for physical care determinations. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

factual findings of the district court, particularly where credibility determinations are involved. *Id.*

### III. Analysis.

**A. Motion to Continue.** Angela contends the district court erred in denying her motion to continue. Additional preparation time and the guidance of competent trial counsel, Angela maintains, would have enhanced the presentation of her case for primary physical care. A more polished presentation, she insists, may have helped the court reach a different result.

As we have already noted, the district court denied the continuance, finding Angela had already caused substantial delays in the proceedings, had long been aware of the need for—and on multiple occasions been encouraged to retain—counsel, and had herself, more than a month before trial, asked that the court consider legal custody and physical care at trial. Further delay, the court suggested, would leave the parties and children in a state of unnecessary and undesirable unrest. Citing concerns of fairness to Patric, the necessity of expedient resolution for the children, Angela's contributing conduct, and the parties' extensive familiarity with the issues eventually litigated, the district court concluded a continuance would have been unjust and cruel to the family.

Iowa Rule of Civil Procedure 1.911 provides that the district court may allow a continuance "for any cause not growing out of the fault or negligence of the movant, which satisfies the court that substantial justice will be more nearly obtained." Iowa R. Civ. P. 1.911(1). We give the district court broad discretion in ruling on continuances and we will not interfere absent clear abuse. *Michael v. Harrison Cnty. Rural Elec. Coop.*, 292 N.W.2d 417, 419 (Iowa 1980).

On our review, we find the district court's analysis persuasive. As the court explained, Angela had been aware of the issues of significance to her for far longer than the six days immediately preceding trial. She had in August 2012 asked the court—twice—to consider legal custody and physical care issues at trial. In July, she had resisted Patric's motion to enforce the mediation agreement, explaining she could no longer agree to joint physical care. Communications between the parties and their attorneys revealed the dispute over physical care may have existed for as long as the lawsuit itself. Indeed, Angela had requested primary physical care in the original petition for dissolution, filed two years before the September 2012 trial. Further, as the district court noted, Angela had been represented by five separate attorneys during the pendency of the proceedings.[2] Despite the court's August 2012 admonition that she retain representation for the trial as soon as practicable, she failed to do so until six days before trial. Finally, as the district court explained, the case was nearly two years old, the financial and emotional strain of the litigation was taking its toll on both the parties and their children, and all involved had much to gain from an expedient resolution. Given these circumstances, we find, as the district court did, that Angela was largely responsible for any lack of preparation and any ineffectiveness in the presentation of her case. Accordingly, we find no abuse of discretion in the district court's denial of a continuance under the circumstances presented here.

**B. Physical Care.** Angela argues the district court erred in awarding joint physical care, given the parties' historic apportionment of

---

[2]The reasons for the breakdown of the relationships between Angela and the series of lawyers who represented her in this case are not clearly developed in the record.

caregiving responsibilities, the extent of the parties' communication problems, and the contentiousness of the marriage. The district court disagreed, finding joint physical care was in the best interests of the children for several reasons: (1) the children had thrived under the joint physical care arrangement of the previous two years, (2) the daughter was doing well in school, (3) the son was developing well for his age, (4) both children benefited from frequent contact with both parents, and (5) both parents had been actively involved in caring for the children and their activities.

The fundamental concern in making a primary physical care determination is placement of the children in the care of that parent who will best minister to the long-range best interests of the children. *See In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974). As noted above, Iowa Code section 598.41(3) establishes a nonexhaustive list of factors guiding legal custody determinations. *See* Iowa Code § 598.41(3). We have explained those factors, along with other facts and circumstances, are also instructive in determining whether joint physical care is in the best interests of the children. *Hansen*, 733 N.W.2d at 696. Our basic framework for the best-interests physical care inquiry is well established, and stability and continuity of caregiving have been primary considerations. *See id.* Past caregiving patterns are instructive, as the patterns are often reliable proxies for intangible qualities such as parental ability and emotional connection that courts are not typically well positioned to discern. *See id.* The degree of conflict between the parties, the level of agreement regarding daily activities, and the ability to communicate and show mutual respect are also significant factors in making the best-interests determination. *Id.* at 698–99. Ultimately,

however, "the total setting presented by each unique case" must be considered. *Id.* at 699.

Our de novo review of the record reveals conflicting evidence regarding several of these principles. Angela suggested the degree of conflict between the parents was so great as to negatively affect the children. Patric posited that the parties had been able to work through various conflicts—and the district court agreed. We think it noteworthy, as did the district court, that much of the evidence of parenting discord described conflicts arising after the separation. We find the parties' preseparation cooperation suggests a resolution in the dissolution proceeding may alleviate much of the conflict. The temporary protective order tells us little about the prospect of the parents' prospects for cooperation in child-rearing, given the eventual modification and subsequent dismissal of the order, and the district court's finding that Angela lacked credibility and may have been engaging in strategic behavior in requesting the order.

The record is also less than definitive as to the allocation of pre- and postseparation caregiving responsibilities. Angela testified that prior to the separation she had been the primary caregiver for the children; Patric testified parenting responsibilities had been shared equally. We find the record is clear, however, that both parties had significant household responsibilities and both parties were actively involved in raising the children before the separation. Angela testified that Patric became largely uninvolved in parenting after the separation and left such responsibilities to his live-in significant other. Patric's testimony suggested, however, that he remained as actively involved as ever. Regardless, postseparation communications between the parties documented in the record and the terms of the mediation agreements support our finding that both parents have had regular and significant

parental interaction with the children since the dissolution proceeding began and both have been extensively involved in activities and decision making for the children. Accordingly, the past caregiving patterns of the parties do not augur in favor of Angela's primary care claim or against Patric's request for joint physical care.

Having examined the record de novo, we give weight to the credibility findings of the district court. That court had distinct advantages in assessing credibility, having observed the parties firsthand and having drawn upon senses unavailable to us on appeal. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). We are guided by the district court's finding that Angela's allegations regarding parental conflict and conduct lacked credibility. We also adopt as our own the district court's finding that the children have thrived under the already-existing joint physical care arrangement and are likely to continue to do so. Given the historical involvement of both parents in child-rearing, the benefits derived by the children from the parties' mutually-agreed-upon joint physical care arrangement during the last two years, and the importance to the children of continuity, stability, and parental contact, we believe this is a case in which joint physical care as ordered in the district court's decree is in the best interests of the children. We therefore affirm.

**IV. Conclusion.**

We conclude the district court did not err in denying the requested continuance. We find joint legal custody and joint physical care is in the best interests of the children and therefore affirm the decision of the district court.

**AFFIRMED.**

This opinion shall not be published.